UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 3:14-CR-83 JD |
| ) | |
| ANTWON WILLIS ) | |

**OPINION AND ORDER**

A jury found Antwon Willis guilty of conspiring to distribute at least 100 grams of heroin. The Court then sentenced Mr. Willis to 235 months of imprisonment. After an unsuccessful appeal, Mr. Willis moved to vacate his conviction and sentence under § 2255. He argues that his trial counsel and appellate counsel were ineffective in multiple respects. Several of his arguments arise out of his belief that venue was improper in this district, but that belief is unfounded and Mr. Willis has not identified any basis on which venue could have been challenged. He raises other arguments that are equally insubstantial.

Mr. Willis also argues, though, that he dealt the heroin that gave rise to his conviction at the direction of federal officials, for whom he worked as a confidential informant. If the facts he asserts are true, those facts could have supported a "public authority" affirmative defense, which applies when an individual engages in unlawful activity at the direction of government officials. The government offers reasons to disbelieve Mr. Willis' assertions, but that dispute requires a hearing to resolve. The Court therefore dismisses Mr. Willis' motion except for his claim that trial counsel was ineffective for failing to raise a public authority defense.

**I.  FACTUAL BACKGROUND**

Antwon Willis was originally indicted along with eight other defendants for conspiring to distribute heroin. After all of the co-defendants plead guilty, a grand jury returned a superseding indictment that included the same conspiracy charge against Mr. Willis but also added a new

defendant on that charge: Ericka Simmons. The superseding indictment also charged Mr. Willis with five counts for individual instances of distributing heroin. Before trial, Mr. Willis moved to dismiss those counts, arguing that each of those sales took place in Illinois, not Indiana, so venue was improper. The government agreed, so those counts were dismissed. Trial thus commenced on the sole remaining count of the superseding indictment, charging that Mr. Willis and Ms. Simmons conspired to distribute over 100 grams of heroin.

Evidence at trial revealed that Mr. Willis first came to law enforcement's attention in July 2010. Officers set up a controlled buy and arrested Mr. Willis in possession of about 50 grams of heroin and a large amount of cash. In a subsequent interview, Mr. Willis admitted that he was dealing heroin. He was not charged at that time, though, as agents hoped that his cooperation could assist them in other investigations. In 2011, another set of law enforcement officers began investigating an influx of heroin in northern Indiana. They were able to conduct controlled buys with Mr. Willis and two other individuals who were dealing heroin for Mr. Willis. He was not charged at that point either, though, and he fell off law enforcement's radar for a time.

In 2014, Mr. Willis came to law enforcement's attention again. At that time, law enforcement identified a large number of individuals in northern Indiana who were regularly purchasing heroin from Mr. Willis, some of whom were also reselling some of the heroin in Indiana. Five of those individuals testified at trial about their course of buying heroin from Mr. Willis. Generally, the witnesses testified that they began buying heroin from Mr. Willis around 2010. They described how each time they would call Mr. Willis to arrange a transaction, he would direct them where and when to meet, and then they would usually meet in their cars and toss over the drugs and money.

Initially, the transactions took place in Illinois with Mr. Willis himself. Around 2011 or 2012, though, some of the transactions were completed by Ms. Simmons, who was Mr. Willis' girlfriend. The buyers would always initiate the transactions by contacting Mr. Willis, who would arrange the meeting, but sometimes Ms. Simmons would be the one who arrived to conduct the exchange. The buyers also testified that the transactions would occur at various locations on either side of the Indiana–Illinois border, including at an apartment complex in Hammond, Indiana where Ms. Simmons and Mr. Willis lived. Two of the buyers also sometimes traveled out of town for work. On those occasions, they would send payments by Moneygram and Mr. Willis would mail them the heroin. Mr. Willis directed them to send the payments in Ms. Simmons' name, and Ms. Simmons retrieved all of those payments. She picked up all but one of those payments in Indiana.

At trial, Mr. Willis' attorney conceded to the jury that Mr. Willis had distributed heroin. He argued, however, that Mr. Willis did so alone and not part of a conspiracy, which was the sole charge against him. In particular, he argued that Mr. Willis had only a buyer–seller arrangement with the Indiana buyers. He also argued that the indictment required the government to prove a conspiracy with the Indiana buyers, not just Ms. Simmons. The Court denied a Rule 29 motion, holding that the evidence was sufficient to support a finding that Mr. Willis had joined a conspiracy with Ms. Simmons, and that the conspiracy between those two was included within the broader conspiracy alleged in the indictment and could thus support a conviction. The jury returned guilty verdicts, finding that Mr. Willis and Ms. Simmons had conspired to distribute at least 100 grams of heroin. At the outset of trial, counsel had also objected to the racial composition of the jury, noting that Mr. Willis and Ms. Simmons are both black but the

venire included only one black juror. The Court overruled that objection and declined to summon a new venire.

At sentencing, the Court resolved various objections, including an objection to the amount of drugs for which Mr. Willis should be held responsible under the sentencing guidelines. The Court found that Mr. Willis was responsible for distributing at least 10 kilograms of heroin over his course of dealing. Along with the Court's other findings, that resulted in an advisory guideline sentencing range of 360 months to life. After hearing from Mr. Willis and both counsel, the Court varied downward from that range and imposed a sentence of 235 months' imprisonment. On appeal, Mr. Willis was represented by another attorney from trial counsel's firm. Appellate counsel raised two issues: an objection to the racial composition of the jury, and an argument that the indictment required the government to prove a conspiracy with the Indiana buyers, not just Ms. Simmons. The court of appeals disagreed with both arguments and affirmed Mr. Willis' conviction. *United States v. Willis*, 868 F.3d 549 (7th Cir. 2017). His conviction now final, Mr. Willis filed a motion under § 2255 to vacate his conviction and sentence.

## II.  STANDARD OF REVIEW

Section 2255(a) of Title 28 provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full

process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)).

## III.  DISCUSSION

Mr. Willis offers multiple grounds in support of his motion to vacate his conviction and sentence. He argues that he received ineffective assistance of counsel both at trial and on appeal. He also asserts a claim of prosecutorial misconduct. The government argues that the claims are each deficient and should be dismissed without a hearing. The Court addresses each in turn

**A.     Trial counsel**

Mr. Willis argues that he received ineffective assistance of counsel in multiple respects at the trial stage. To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and (2) that he was prejudiced by the deficiencies in his counsel's performance, meaning that there is a reasonable probability that the results of the proceeding would have been different with effective representation. *Strickland v. Washington*, 466 U.S. 687 (1984).

First, Mr. Willis argues that his attorney should have presented a defense that Mr. Willis was acting at law enforcement's direction in engaging in the activities that gave rise to his conviction. Mr. Willis was arrested in 2010 for possession of heroin. He was not charged at that time, but he had a proffer session with the government in November 2010 and became a confidential informant. That much appears undisputed. Mr. Willis now assets, though, that government agents instructed him at that time to continue dealing drugs in order to build trust with drug dealers up the distribution chain. In particular, he asserts under oath that he was "instructed to continue his drug selling activities to provide an appearance of legitimacy to the larger goal of gaining the confidence and interactions with major drug dealers in the area." [DE

5

506 p. 5; *see also id.* p. 15 (stating that he was granted immunity so that his "continued drug activities would establish a particular 'credibility' with the major drug se[l]lers, who presumably would take [him] into their confidence, providing [him] with the opportunity to fulfill the overarching goal of assisting the DEA in a major conviction(s)")]. Mr. Willis asserts that he was promised "immunity against future DEA investigations and prosecutions arising therefrom." *Id.* p. 5–6. He also asserts that this arrangement continued "throughout the entire duration of the charged conspiracy." *Id.* p. 15.[1]

If true, those facts could have been used to support what is generally referred to as a "public authority" defense. That defense is an affirmative defense that applies if "the defendant engages in conduct at the request of a government official that the defendant knows to be otherwise illegal." *United States v. Strahan*, 565 F.3d 1047, 1051 (7th Cir. 2009). "In other words, the public-authority defense requires reasonable reliance by a defendant on a public official's directive to engage in behavior that the defendant knows to be illegal." *Id.*; *see also United States v. Stallworth*, 565 F.3d 721, 726–27 (7th Cir. 2011) (noting that "with the public authority defense the defendant engages in conduct that the defendant knows to be otherwise illegal but that has been authorized by the government"). The public authority defense "is grounded in the principle that prosecuting an individual who acts in reliance upon official statements that one's conduct is lawful offends due process." *United States v. Jumah*, 493 F.3d 868, 874–75 (7th Cir. 2007). As an affirmative defense, it does not negate an essential element of a charge, but excuses a defendant from liability for conduct that would otherwise be unlawful. *Id.*

---

[1] Mr. Willis also submitted part of a DEA report reflecting that he had a proffer with multiple DEA agents and Assistant United States Attorneys present, though that partial document does not reflect any instructions to continue dealing drugs.

The Court finds that Mr. Willis has asserted enough facts to warrant further development on this claim. Mr. Willis has asserted under oath that he continued dealing heroin at the direction of law enforcement, and that this arrangement continued for the duration of the charged conspiracy. He has also identified the meeting at which that direction was given and the specific individuals who were present. These facts would be in his personal knowledge, so his own sworn statements are competent evidence in support of his motion. If the agents or attorneys in fact gave him that direction, that could support a defense that he was reasonably relying on a public official's directive to engage in that behavior. Mr. Willis also asserts that he provided counsel a document reflecting the DEA's agreement, which could have alerted counsel to this defense's potential application. [DE 506 p. 15 (asserting that he "made available to Defense Counsel one of the relevant DEA agreement documents")].

In arguing to the contrary, the government relies primarily on Mr. Willis' allocution at the sentencing hearing. The government argues that his sworn statements at that hearing contradict his present assertions. To be sure, his present assertions are more direct, and Mr. Willis did not state at the sentencing hearing that he was specifically directed to deal heroin. But much of what he said at sentencing is at least consistent with what he claims now. During his allocution, Mr. Willis said:

> I also became a CI for the DEA in Chicago and was put back out on the street to get more information, so that's what led me to, you know, getting back out and doing the things that I did. I actually – on November the 29th, 2010, I had a proffer . . . with the grand jury downtown Chicago . . . . You know, I got caught with 50 grams, and they said that, you know – the DEA said if I would help, you know, to try to stop some of this heroin, you know, that they weren't going to charge me with those things. So I agreed to work. I set up a couple of buys and some – a couple buys and recordings and things like that, so I was given a CI number back in Illinois. So once this individual that we was – I was specifically supposed to get information on, he didn't trust me around him. But after I went down and talked to the U.S. district attorney, she told me to get back out and keep my ears open. And that's what led me to run into some of the co-defendants and using drugs and really

>being the middle guy, the runner, running around Chicago, picking up drugs, and they would pay me.

[DE 398 p. 36–37].

In fact, those statements were suggestive enough of Mr. Willis' current argument that the Court followed up and asked counsel to clarify whether any of the amounts of heroin included in the drug quantity finding were the result of Mr. Willis working for the DEA. *Id.* p. 38. Counsel explained his understanding of the relevant background and explained that the amounts involved in this case were not part of Mr. Willis' cooperation with law enforcement. But if the facts Mr. Willis asserts are true, that understanding could have been the product of a failure to investigate or to review the materials that Mr. Willis claims corroborate his story.[2] The Court also acknowledges that counsel said to "speak up, Mr. Willis, if I say anything wrong," and Mr. Willis did not interject to disagree with counsel's explanation. *Id.* p. 39. When counsel said that, though, he was in the midst of explaining the precautions Mr. Willis took to avoid anyone dying from his heroin. Only later did counsel conclude by stating that the amounts involved in this case were not part of his cooperation.

In addition, a defendant's failure to object to counsel's statements is not the same as making his own statement under oath. Though Mr. Willis' failure to interject might be relevant in evaluating the credibility of his current assertions, accepting his current assertions would not require a conclusion that he perjured himself at sentencing, so the Court cannot disregard them on that basis. *See Thompson v. United States*, 732 F.3d 826, 829 (7th Cir. 2013) ("[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."). In sum,

---

[2] Of course, it is also possible that counsel investigated this issue and found it to be unsupported or unlikely to succeed, or made a strategic decision to pursue a different defense, but those issues cannot be resolved on the present record.

the Court concludes that Mr. Willis has alleged enough to warrant a hearing on this claim, and that the statements at the sentencing hearing do not justify disregarding those allegations. The Court therefore grants his request for counsel and will allow further proceedings on this claim.

Mr. Willis' other arguments are insubstantial, though. Mr. Willis argues in particular that venue was improper in the Northern District of Indiana, but any challenge on that basis would have failed. Mr. Willis was charged with conspiracy to distribute heroin under 21 U.S.C. § 846, and venue for that charge is proper in any district in which an overt act in furtherance of the conspiracy occurred. *United States v. Rodriguez*, 67 F.3d 1312, 1318 (7th Cir. 1995); *United States v. Mayo*, 721 F.2d 1084, 1089–91 (7th Cir. 1983). Mr. Willis argues that venue was improper in Indiana because he lived in Illinois and it was just happenstance that his buyers came from Indiana. There was abundant evidence, though, of many acts that Mr. Willis and Ms. Simmons took in Indiana in furtherance of their conspiracy.

Multiple witnesses testified to buying heroin from Mr. Willis and Ms. Simmons in Hammond, Indiana, which is in the Northern District of Indiana. Brandon Heuer testified that he bought heroin from Mr. Willis in "Lansing, Illinois, and sometimes in Indiana, Hammond." [DE 396 p. 145]. Brittany Lemond likewise testified that although at first the sales always occurred in Illinois, later they began occurring in Indiana. In particular, she testified that she regularly received heroin from Mr. Willis and Ms. Simmons at and around an apartment in Hammond, Indiana. *Id.* p. 200–03. Derrick Penwell echoed that testimony, testifying that the transactions began occurring in "Hammond, Indiana, or just over the line in Illinois on Torrence Avenue." [DE 397 p. 149]. He also testified that about half of the transactions took place in Hammond. *Id.* p. 151. Ms. Lemond and Mr. Penwell also sometimes sent Moneygram payments when they were out of town and needed Mr. Willis to mail them the heroin. A representative from

Moneygram testified that, of those payments, "all but one went to Indiana," where Ms. Simmons picked them up. *Id.* p. 135. Another witness testified that about forty percent of his purchases from Mr. Willis took place in Indiana, with the rest in Illinois. *Id.* p. 17. An officer also testified that he tracked one of Mr. Willis' customers on multiple instances to locations in both Illinois and Indiana and observed deals occur with Mr. Willis at those locations. [DE 400 p. 6–9]. Given this abundant evidence of acts taken in furtherance of the conspiracy in Indiana, any challenge to venue would have been frivolous. Counsel was not ineffective for declining to raise such an insubstantial issue.

Mr. Willis relatedly argues that counsel should have objected to the conspiracy charge in light of the dismissal of Counts 2 through 6. Each of those counts alleged individual instances of distribution. Prior to trial, Mr. Willis' counsel moved to dismiss each of those counts for improper venue because the transactions each took place in Illinois, not Indiana. The government agreed to dismiss each of those counts, so Mr. Willis proceeded to trial solely on the conspiracy charge in Count 1. Mr. Willis now argues that those counts had a spillover effect that tainted Count 1. He argues that counsel should have moved to dismiss Count 1 as well, which would have forced the government to pursue that charge "based exclusively on Indiana evidence." [DE 506 p. 26]. That argument confuses venue with admissibility, though. Venue concerns where a charge can be brought, not what evidence can be used to support the charge. Though the conspiracy has to take place at least in part in Indiana for the charge to be brought there, the government is entitled to offer evidence of the entire conspiracy, including acts outside of Indiana. The dismissal of Counts 2 through 6 thus has no effect on the conspiracy charge in Count 1. Since venue on Count 1 was proper in Indiana for the reasons already discussed, any challenge to Count 1 on that basis would have failed.

Mr. Willis next argues that trial counsel should have retained chemists to testify to the drug weights and compositions. Mr. Willis offers no reason why that testimony would have been helpful, though. The government's case relied overwhelmingly on testimony by people who personally bought and used heroin from Mr. Willis, rather than on drugs that were seized. Numerous witnesses testified to buying heroin from Mr. Willis, and they testified about what they bought, in what quantities, and how often. Testimony from a chemist would have had no effect on that evidence.

Of the comparatively smaller amounts that the government was able to seize over the course of the investigation, those amounts were analyzed by the DEA lab and determined to be heroin. Mr. Willis offers no reason to believe that those analyses were inaccurate or that, had his attorney retained a chemist, the results would have been different. And while the chemists who conducted those analyses did not each testify, that was because the parties reached a stipulation to allow an agent to testify to those amounts, instead of requiring a series of chemists appear and testify to information that was not contested anyway.[3] [DE 400 p. 3 ("We have reached an accommodation about what we are going to do about the drug testing; that is, we're going to let the agents testify – even though it's hearsay – to the conclusions of the drug testing, rather than a formal stipulation. I just thought I'd mention that, but we've got a way to streamline this.")]. That was plainly a strategic decision, which could not demonstrate ineffectiveness. And again, Mr. Willis has not shown any possibility of prejudice, as he has not given any reason to believe

---

[3] Recall that Mr. Willis' counsel openly conceded that Mr. Willis was a heroin dealer, and defended the charge by arguing that Mr. Willis did so alone and not as part of the charged conspiracy. That was a savvy strategy, as the government had a mountain of evidence— including Mr. Willis' own admissions—that Mr. Willis was a heroin dealer, so it made sense to focus the defense on the narrower question of whether a conspiracy existed within the scope of the indictment.

that a chemist might have offered favorable testimony, or that the quantities of heroin that were seized and tested would have had any impact on the jury's verdict.

Mr. Willis makes various other arguments, but they are undeveloped and fail to suggest any basis for an ineffective assistance claim. He argues, for example, that counsel should have impeached cooperating witnesses about how much heroin they testified to buying and where they got their money from. Those topics were explored at length at trial, though. He also argues that the Indiana buyers never traveled to Illinois, so they could never have met him. The evidence at trial was overwhelmingly to the contrary though. The witnesses testified at length to their interactions with Mr. Willis and the locations of those interactions. Phone records also showed the witnesses frequently contacting him. Mr. Willis even admitted in his recorded statement that he knew the various witnesses and sold heroin to them. He has not identified any other evidence his attorney could have offered to the contrary, either. Finally, Mr. Willis argues that his counsel should have objected to the drug quantity finding at sentencing. Counsel *did* object to the drug quantity finding at sentencing, though. The Court overruled that objection, but Mr. Willis has not shown what else his counsel should have done and, as discussed below, he has not identified any basis for challenging the Court's findings. Counsel was thus not ineffective in these respects.

Therefore, the Court dismisses the claim for ineffective assistance of trial counsel except as to the claim that counsel should have investigated and pursued a public authority defense.

**B.     Appellate counsel**

Mr. Willis also argues that he received ineffective assistance of counsel on appeal, at which point he was represented by another attorney from trial counsel's firm. On appeal, his attorney argued that Mr. Willis' conviction should be vacated because of a variance from the indictment and because of the racial composition of the jury. The court of appeals disagreed in both respects and affirmed. Mr. Willis now argues that appellate counsel should have raised

12

several additional issues. He asserts that counsel should have also argued that jurisdiction and venue were improper, that he had immunity as a confidential informant, and that the drug quantity finding at sentencing was flawed. He also argues that appellate counsel had a conflict of interest because he was a partner of the same firm as trial counsel and accepted trial's counsel input as to which issues to raise on appeal.

When a defendant argues that appellate counsel was ineffective for failing to raise a viable issue on appeal, the defendant must first show that counsel "ignored 'significant and obvious' issues." *Blake v. United States*, 723 F.3d 870, 888 (7th Cir. 2013) (quoting *Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008)). If so, the defendant must also show "that the neglected issues are 'clearly stronger' than the arguments that actually were raised on appeal." *Id.* (quoting *Suggs*, 513 F.3d at 678). "A lawyer who concentrates attention on issues that have the best chance of success does not display objectively deficient performance, and thus does not render ineffective assistance of counsel." *Knox v. United States*, 400 F.3d 519, 522 (7th Cir. 2005).

First, counsel was not ineffective for failing to object to jurisdiction or venue, as those arguments would have had no chance of success. As to jurisdiction, federal district courts have jurisdiction "of all offenses against the laws of the United States." 18 U.S.C. § 3231. Mr. Willis was charged with violating 18 U.S.C. § 846, which is a law of the United States, so the Court had jurisdiction. *See United States v. Bowling*, 952 F.3d 861, 867 (7th Cir. 2020). An argument to the contrary would have been frivolous. As to venue, the Court has already explained why venue was proper in this district, so any challenge would have had no chance of success on the merits. That challenge would have been procedurally barred, too. A challenge to venue "can be waived and a defendant needs to be specific in a motion for acquittal in order to preserve a venue

argument for appeal." *United States v. Knox*, 540 F.3d 708, 716 (7th Cir. 2008). Mr. Willis' trial counsel did not do so, so even if appellate counsel believed that venue was deficient, he would have been precluded from raising that argument on appeal. Thus, appellate counsel was not ineffective for declining to raise an argument that would have failed both procedurally and substantively.

Mr. Willis next argues that appellate counsel should have raised his immunity as a confidential informant. He argues that appellate counsel had possession of information supporting that defense, but failed to present it to the court of appeals. That argument could not have been raised, though, since it would have depended on evidence outside the record. "Arguments on direct appeal are 'necessarily limited to the trial record, since a court of appeals does not take evidence.'" *Vinyard v. United States*, 804 F.3d 1218, 1226 (7th Cir. 2015) (quoting *United States v. Taglia*, 922 F.2d 413, 417 (7th Cir. 1991)). As discussed above, Mr. Willis argues that trial counsel was ineffective for failing to raise that issue and to offer evidence of his immunity. But regardless of whether he prevails on that argument, it could not have been raised on appeal since the evidence to support it was not in the record and he had not asserted that defense at trial. Thus, if an error occurred, it was at trial, not on appeal.

Mr. Willis next argues that appellate counsel should have challenged the drug quantity findings at sentencing. He offers various objections to those findings, but none of those objections are well-founded or would have had any chance of success on appeal. Mr. Willis argues, for example, that he should not have been held accountable for any drugs he distributed before he began conspiring with Ms. Simmons. Under the guidelines, however, a defendant is responsible not only for all acts that were part of the offense of conviction, but also for all acts "that were part of the same course of conduct" as the offense of conviction. U.S.S.G.

§ 1B1.3(a)(2). The evidence at trial and in the Presentence Report established that Mr. Willis had engaged in a consistent course of dealing heroin, dating back to at least 2010. Ms. Simmons might not have joined him in that conduct—thus creating the conspiracy for which they were convicted—until a year-or-so later, but Mr. Willis is still accountable under the Guidelines for all the heroin he distributed in that course of conduct. *United States v. Austin*, 806 F.3d 425, 433 (7th Cir. 2015) ("For purposes of calculating drug quantity, the offense level is determined by the amount of drugs attributable to the defendant during his entire course of relevant conduct, 'not simply the amount associated with the particular offenses of conviction.'" (quoting *United States v. Redmond*, 667 F.3d 863, 875 (7th Cir. 2012))). Mr. Willis likewise objects to being held accountable for sales he made to the co-defendants in the original indictment, since he argues that they were only users and not his conspirators. That doesn't matter though, for the same reason: he was distributing heroin to them as part of the same course of conduct as the conspiracy for which he was convicted. Whether those individuals used the heroin or resold it—or were part of his conspiracy or not—makes no difference to the guidelines.

Mr. Willis next argues that the drug quantities were unsupported because the government did not produce chemists' reports verifying the composition and quantity of the substances. He offers no reason, though, why those materials would have been necessary. The drug quantities for which Mr. Willis was held responsible were based overwhelmingly on testimony by people who bought the drugs from Mr. Willis and used them, rather than on analyses of substances that were seized. As the Court explained in its ruling at sentencing, the Court credited the testimony and statements by those witnesses about how much heroin they bought from Mr. Willis and for how long. [DE 398 p. 18–23]. It would have been frivolous for counsel to object on appeal based on the lack of a chemist's report.

Mr. Willis also argues in his reply brief that the drug quantity had to be found by the jury. That's true only as to the quantity of drugs necessary to increase the *statutory* sentencing penalties, not the advisory *guideline* sentencing range. *United States v. Austin*, 806 F.3d 425, 433 (7th Cir. 2015). Here, the jury found beyond a reasonable doubt that Mr. Willis conspired to distribute over 100 grams of heroin, which led to a statutory sentencing range of 5 to 40 years. 21 U.S.C. § 841(b)(1)(B). Findings underlying the guideline calculation, however, are made by the Court based on a preponderance of the evidence. *Austin*, 806 F.3d at 433. The Court did so here, finding Mr. Willis responsible for at least 10 kilograms of heroin. While Mr. Willis may disagree with the Court's findings, those findings are reviewed on appeal "only for clear error." *United States v. Tate*, 822 F.3d 379, 373 (7th Cir. 2016). Mr. Willis has not identified any argument that could have been made on appeal that might have satisfied that standard. *Austin*, 806 F.3d at 431 ("Determining witness credibility is especially within the province of the district court and can virtually never be clear error." (quotations omitted)). Counsel was thus not ineffective in declining to challenge the drug quantity finding and for choosing to instead focus his arguments on attacking Mr. Willis' conviction.[4]

Finally, Mr. Willis argues that his appellate counsel had a conflict of interest because trial counsel was another partner at his firm. Mr. Willis suggests that appellate counsel declined to raise trial counsel's errors at trial in order to avoid embarrassing his partner. Claims of ineffective assistance of trial counsel are not properly brought on direct appeal, though. Those claims generally depend on facts outside the record, so unless the trial court already held a

---

[4] Mr. Willis also suggests that the court of appeals asked during oral argument why counsel did not challenge his sentence. Though the judges asked some questions relating to Ms. Simmons' challenge to the jury's drug quantity finding, the court's opinion rejected that argument and affirmed her conviction and sentence.

hearing on such a claim, they are "doomed." *United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014). And if a defendant argues such a claim on appeal anyway, the defendant will not be able to raise the claim again in a § 2255. *United States v. Cates*, 950 F.3d 453, 457 (7th Cir. 2020) ("By raising an ineffective-assistance claim prematurely, on direct appeal, a defendant can easily throw away any chance he has at success because the claim may not be presented a second time on collateral attack under 28 U.S.C. § 2255."); *Flores*, 739 F.3d at 341 ("[W]hen an ineffective-assistance claim is rejected on direct appeal, it cannot be raised again on collateral review."). Thus, the Seventh Circuit has "said many times that it is imprudent to present an ineffective-assistance argument on direct appeal." *Flores*, 739 F.3d at 341; *Vinyard*, 804 F.3d at 1227 ("[B]ringing a premature claim for ineffective assistance of counsel on direct appeal is not prudent, and we have repeatedly cautioned defendants against raising such claims on direct appeal.").

Because Mr. Willis' ineffective-assistance-of-trial-counsel claim depends on facts outside the record and no hearing was held on that claim before the appeal, it had no chance of success on appeal. And if counsel had asserted that claim on appeal, Mr. Willis would not be able to present it now. Appellate counsel was therefore wise, not ineffective, in deciding not to make that argument. Mr. Willis has not identified any other arguments that could have been raised on direct appeal with any likelihood of success, either. The Court therefore dismisses any claim for ineffective assistance of counsel on appeal.

## C.     Prosecutorial misconduct

Finally, Mr. Willis asserts a claim of prosecutorial misconduct. His argument in this respect is just a rehash of his venue arguments, though, as he asserts that the prosecutors improperly filed charges in this district. Even if that was true, it would not be a form of misconduct, it would just provide a potential defense. And as already discussed, venue on the

conspiracy charge was proper in this district. The Court therefore dismisses any prosecutorial misconduct claim.

## IV.  CONCLUSION

The Court concludes that Mr. Willis has offered sufficient allegations to justify further proceedings on his claim that trial counsel should have investigated and pursued a public authority defense. The Court thus grants Mr. Willis' request for counsel. After counsel's appearance, the Court will set this matter for a hearing or allow further discovery if necessary. The Court dismisses the remaining claims.

SO ORDERED.

ENTERED: May 14, 2020

                                        /s/ JON E. DEGUILIO
                                  Judge
                                  United States District Court