UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:14-CR-83 JD |
| (1) ANTWON WILLIS | |

**OPINION AND ORDER**

The incarcerated defendant, Antwon Willis, proceeding *pro se*, has moved for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (DE 652.) For the reasons herein, the motion will be denied.

**A. Background**

From 2009 to October of 2014, Mr. Willis and his co-defendant Ericka Simmons, distributed close to 18 kilograms of heroin in Michigan City and the surrounding areas. *United States v. Willis*, 868 F.3d 549, 552 (7th Cir. 2017). On February 5, 2016, a jury convicted Mr. Willis of conspiring to distribute over 100 grams of heroin in violation of 21 U.S.C. §§ 846, 841(b)(1)(B). (DE 304). At sentencing Mr. Willis faced a statutory range of 5 to 40 years of imprisonment and a Guideline range of 360–480 months of imprisonment. (DE 398 at 23, 33, 51.) The Court granted Mr. Willis a downward variance of six offense levels, resulting in a non-Guideline sentencing range of 235 to 293 months of imprisonment. (*Id.* at 50.) The Court sentenced Mr. Willis to a below-Guideline term of 235 months of imprisonment followed by four years of supervised release. (*Id.* at 51.)

Mr. Willis has now filed a motion for compassionate release which is opposed by the Government. Mr. Willis did not file a reply brief to the Government's response in opposition.

**B. Legal Standard**

A court generally cannot modify a sentence once the sentence has been imposed. 18 U.S.C. § 3582(c). However, an exception to that general rule allows a court to modify a sentence, after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant such a reduction," the reduction is consistent with policy statements issued by the Sentencing Commission, and the defendant has submitted such a request to the warden at least 30 days before filing a motion or has fully exhausted all administrative rights within the Bureau of Prisons ("BOP"). 18 U.S.C. § 3582(c)(1)(A). This analysis proceeds in two steps. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) (*cert*. denied 142 S. Ct. 1363 (2022)). At the first step the defendant must identify an extraordinary and compelling reason warranting a sentence reduction. *Id.* If the defendant establishes such a reason, the district court, in the discretion conferred by the statute, considers any applicable § 3553(a) factors as part of determining what reduction to award the defendant. *Id.*

The policy statements to the Sentencing Guidelines offer some examples of when extraordinary and compelling reasons may be present. As applicable here, those include when the defendant is suffering from a terminal illness or is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the prison. U.S.S.G. § 1B1.13.[1] Specifically, the relevant provision states:

**(b) Extraordinary and Compelling Reasons.**--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
**(1) Medical Circumstances of the Defendant.**--

---

[1] The Court notes that the definition of extraordinary and compelling reasons has been updated by the Sentencing Commission since Mr. Willis filed his motion. The Court will apply the latest version of the Guidelines in assessing his request.

> **(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> **(B)** The defendant is--
>> **(i)** suffering from a serious physical or medical condition,
>> **(ii)** suffering from a serious functional or cognitive impairment, or
>> **(iii)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
> **(D)** The defendant presents the following circumstances--
>> **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>> **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>> **(iii)** such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13.

This application note also cautions that, in general, a change in law "shall not be considered for purposes of determining whether an extraordinary and compelling reason exists." U.S.S.G. § 1B1.13(c). However, this provision notes a limited exception for when a defendant received "an unusually long sentence." This provision regarding the exception states:

> **(6) Unusually Long Sentence.**--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

The application note also indicates that rehabilitation of the defendant "is not, by itself, an extraordinary and compelling reason." *Id.* at 1B1.13(d).

**C. Discussion**

Having reviewed Mr. Willis' motion, the Court finds that he has not established an extraordinary and compelling reason warranting modification of his sentence.

Mr. Willis offers three claimed extraordinary and compelling reasons for modification of his sentence. First, Mr. Willis claims that a subsequent change in law means he would only be subject to a 135–180 month recommended Guideline sentencing range and not the "235 months statutory mandatory minimum" he was at in his sentencing. (DE 652 at 2.) As such, he argues he received a sentence disproportionate to the one which would have been imposed if he was sentenced today. Second, Mr. Willis argues he is at a higher risk for complications from a COVID-19 infection than an average inmate based upon the combination of medications he is taking to treat his health conditions. (*Id.*) Lastly, he argues that his rehabilitation while incarcerated, including his educational work, low recidivism risk assessment, and lack of disciplinary record merit a reduction in sentence. (*Id.*)

The Government opposes Mr. Willis' motion. The Government argues that Mr. Willis has failed to exhaust his administrative remedies within the BOP regarding two out of his three claims for relief, none of his claims constitute an extraordinary and compelling reason for relief, and the § 3553(a) factors weigh against granting any relief.

**(1)** *Mr. Willis has failed to exhaust his administrative remedies regarding his disproportionate sentence and rehabilitation claims*

The Government first argues that Mr. Will has failed to comply with the compassionate release statute by exhausting his administrative remedies in the BOP regarding his disproportionate sentence and rehabilitation claims.

Prior to adjudicating a motion directly from a defendant under § 3582(c)(1)(A), a defendant "must first present his request for compassionate release to the warden and exhaust administrative appeals (if the request is denied) or wait '30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" 18 U.S.C. § 3582(c)(1)(A); *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021). This is a mandatory claims processing rule which the Court must enforce when it is properly invoked. *Id.* at 780. In order to exhaust administrative remedies, an inmate must first have presented "the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021).

The Government notes that Mr. Willis filed a request with the BOP in May of 2023, but that this request only raised concerns related to his medical conditions. (DE 652-1 at 5.) This request did not mention his current arguments regarding disproportionate sentencing or rehabilitation. As such, Mr. Willis has exhausted the claim related to his health conditions but not his other claims and the Court is required to deny those claims before considering their merits.

**(2)** *Mr. Willis has not established an extraordinary and compelling reason for a sentence reduction*

The Court will address each of Mr. Willis' three claimed extraordinary and compelling reasons in turn. The Court will consider, as alternative holdings, the merits of Mr. Willis' unexhausted claims.

(a) *Mr. Willis' sentencing argument is without merit*

Mr. Willis' first argument, that he received a disproportionate, or unusually long, sentence relative to what he would receive if sentenced today is entirely without merit as it rests on erroneous factual claims. Mr. Willis claims that at his sentencing he was subject to a 235-month, statutorily required, mandatory minimum sentence. (DE 652 at 1–2.) This is simply incorrect. His statutory sentence range was a minimum of five years, that is 60 months, and a maximum of 40 years, or 480 months. (DE 398 at 23, 33, 51.) His Guideline recommended range was 360–480 months of imprisonment. (*Id.* at 51.)

Even if Mr. Willis had the facts right, this argument would fail as there has been no change in law which could raise the potential of applying Sentencing Guidelines § 1B1.13(b)(6). As the Government correctly notes, Mr. Willis' statutory and Guideline sentencing ranges today would be identical to those calculated at his original sentencing. Mr. Willis' original sentence cannot be considered unusually long, as the term is defined in § 1B1.13(b)(6), if it is based on the same statutory and Guideline range as would be applied today. Mr. Willis has not identified any legal authority which would change either calculation.[2] He conclusively asserts that the (erroneous) statutory mandatory minimum based on his two prior felony offenses would no

---

[2] Section 1B1.13(b)(6) does not explicitly refer to statutory or Guideline ranges, rather it refers to "[a] change [which] would produce a gross disparity between the sentence being served and the sentence *likely to be imposed at the time the motion is filed*." However, these two ranges provide the best estimate of a sentence likely to be imposed as the statutory range limits the Court's discretion and the Guideline range is the starting point for determining a sentence.

6

longer apply but does not explain why, or even discuss how his two prior felony convictions affected his proposed sentencing ranges. (DE 652 at 2.) Mr. Willis' criminal history did not impact his statutory sentencing range, which was based solely on the amount of heroin he was convicted of distributing. 21 U.S.C. § 841(b)(1)(B). Mr. Willis has four criminal history points based on prior convictions which impacted his Guidelines calculation, but there is no intervening law which would change that calculus.[3]

Mr. Willis' invocation of *Concepcion v. United States*, 142 S.Ct. 2389 (2022) is unavailing to his claim. *Concepcion* moved for a reduced sentence under the First Step Act, while Mr. Willis moved for a reduced sentence under the compassionate release statute which makes *Concepcion* inapplicable. *See United States v. Page*, No. 22-2408, 2023 WL 4397944 (7th Cir. July 7, 2023) ("*Concepcion* did not address, and is therefore irrelevant to, what a district court must do when resolving the threshold question of whether a defendant has an extraordinary and compelling reason for compassionate release.") Moreover, *Concepcion* involved a defendant who was sentenced as a career offender and whose Guideline range changed over time. *Id.* Neither of those circumstances apply here.

Consequently, Mr. Willis has not shown that his previously imposed sentence is an extraordinary and compelling reason for a reduction.

(b) *Mr. Willis' medical conditions do not constitute an extraordinary and compelling reason for a reduction in sentence*

---

[3] The Court notes that pursuant to the retroactive provisions of Amendment 821 to the U.S. Sentencing Guidelines, Mr. Willis' number of criminal history points would change from six to four pursuant to the new provisions for calculating "status points." This is a distinction without a difference as four or six points both place Mr. Willis in Criminal History Category III. Amendment 821 does not affect the calculation of criminal history points based on Mr. Willis' prior convictions.

Mr. Willis indicates his diabetes and history of smoking are risk factors for complications as a result of COVID-19 infection. (DE 562 at 2.) He also lists several medications he is currently taking and generally alleges he faces a potential risk of getting COVID-19 again while in prison.[4]

Mr. Willis' claims do not satisfy the Sentencing Commission's policy statement discussing what medical circumstances constitute an extraordinary and compelling reason. The latest version of the Guidelines contemplates the risk posed by a widespread infectious disease outbreak and notes that may constitute an extraordinary and compelling reason if several criteria are satisfied.[5]

> **(D)** The defendant presents the following circumstances--
> **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
> **(iii)** such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).

The Court recognizes these specific requirements were not in effect at the time Mr. Willis filed his motion and therefore he had no way of knowing he should brief these particular points. That being said, these provide useful guidance as to how the Court should assess Mr. Willis' claim. Without holding him to these specific requirements, the Court finds that Mr. Willis has

---

[4] The medical records Mr. Willis submitted with his motion indicate he previously contracted and subsequently recovered from COVID-19. (DE 652-1 at 6.)

[5] There are other medical circumstances which may qualify as an extraordinary and compelling reason, but Mr. Willis has not argued any are applicable here and the Court's review does not indicate any apply. *See* U.S.S.G. § 1B1.13(b)(1)(A)–(C).

not articulated a specific risk of infection or complication based upon his personal health factors which would constitute an extraordinary and compelling reason for release.

COVID-19 has been a fact of American life for more than three years. *United States v. Vaughn*, 62 F.4th 1071, 1071 (7th Cir. 2023). For prisoners who are vaccinated against the disease, such as Mr. Willis (DE 655-2 at 87), the risk of serious complications from a breakthrough infection is modest. *Vaughn*, 62 F.4th at 1071. Additionally, the comparatively high vaccination rate among BOP staff and inmates has significantly shifted the dynamic when close confinement made places such as prisons, nursing homes, and other locations centers for COVID-19 fatalities. *Id.* The Seventh Circuit has recently noted it has not been presented with data suggesting that being in these locations continues to present a higher risk and Mr. Willis has offered none with his motion. *Id.* The latest COVID-19 data for USP Thompson, where Mr. Willis is located, indicates zero active cases at the facility.[6]

The Court is aware that new variants of the COVID-19 virus have developed, but so too have new variants of the vaccine to combat the virus. *Id.* Mr. Willis has not alleged that the latest variants of the safe and effective vaccine are unavailable to him or would be ineffective based on his combination of conditions. Moreover, BOP medical records indicate his conditions are managed with care available in custody. Specifically, that his blood pressure readings have seen some improvement and he is capable of managing his diabetes without insulin. (DE 655-2 at 2, 60.)

---

[6] Federal Bureau of Prisons, BOP Statistics: Inmate COVID-19, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last accessed April 18, 2024) (reflecting data as of April 17, 2024, that USP Thompson (represented by facility code "TOM") had zero active cases).

In sum, Mr. Willis has not shown that his combination of personal health factors and risk of complications from COVID-19 infection constitute an extraordinary and compelling reason for a reduction in his sentence.

### (c) *Mr. Willis' rehabilitation cannot independently provide an extraordinary and compelling reason for a sentence reduction*

Mr. Willis argues that his discipline-free record in the BOP combined with his record of taking educational and other classes establish an extraordinary and compelling reason for his release. It is important to note that Mr. Willis' rehabilitation, *standing alone*, cannot constitute an extraordinary and compelling reason for reduction in sentence. Congress expressly held that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason [for compassionate release.]" 28 U.S.C. § 994(t); *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) ("We cannot read § 3582(c) to permit good prison conduct and rehabilitation alone to override Congress's determinate sentencing scheme.") That said, his rehabilitative efforts can be considered alongside other factors which warrant a sentence reduction. *Peoples*, 41 F.4th at 842.

Mr. Willis deserves to be commended for his efforts at self-improvement while incarcerated and they undoubtedly reflect well upon him. But they are not sufficient to independently merit a reduction in his sentence. As discussed earlier in this order, Mr. Willis has not established any of his other alleged extraordinary and compelling reasons for release. This means that his rehabilitative efforts stand alone and consequently cannot be an extraordinary and compelling reason for a reduction in his sentence.

Consequently, as Mr. Willis has not established an extraordinary and compelling reason for a reduction in his sentence the Court is obligated to deny his motion.

### (3) *The § 3553(a) factors weigh against reducing Mr. Willis' sentence*

The Court also concludes, in the alternative, that even if Mr. Willis had exhausted his administrative remedies and established an extraordinary and compelling reason for his release, the § 3553(a) factors would weigh against granting his request.

The § 3553(a) factors include a requirement that the sentence imposed should "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Section 1B1.13 also instructs that a factor the Court should consider in adjudicating a request for compassionate release is whether the defendant is a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a)(2).

Mr. Willis was responsible, as an organizer or leader of a conspiracy, for the distribution of at least ten kilograms of heroin, and likely closer to eighteen kilograms or more. (DE 398 at 18–23.) The Court has previously described Mr. Willis as the linchpin of this conspiracy and that the conspiracy involved five or more participants or was otherwise extensive. (*Id.* at 24, 27.) He purchased the drugs from the supplier, prepared the heroin for sale, was the point of contact for buyers to arrange sales, and he directed buyers when and where to meet him. (*Id.* at 25.) It goes without saying that distributing such a large amount of heroin, a particularly dangerous drug, is an extremely serious offense that must be adequately punished. Mr. Willis also possessed a loaded handgun in proximity to drug paraphernalia in his home at the time of his arrest. (*Id.* at 31.)

It also bears on the Court's consideration that Mr. Willis has never accepted responsibility for his conduct, even after his conviction and sentencing. As recently as March of 2022, Mr. Willis testified under oath that "he did not sell heroin in Indiana or in other states despite ample trial evidence to the contrary." (DE 637 at 9.) Further, he has only served approximately forty-nine percent of his 235-month sentence thus far. The original sentence was also imposed after granting a noticeable downward variance to account for the mitigating facts at the time of the offense. (DE 398 at 41–50.) This included Mr. Willis' age at the time of his offense and the corresponding diminished need for incapacitation. (*Id.*)

Considering these factors together the Court finds they weigh strongly against Mr. Willis' release. He committed an extremely serious offense by selling a considerable amount of dangerous drugs into the Michigan City area over the span of approximately five years. His actions, particularly acting as a leader or organizer of this conspiracy, reflect a conscious and deliberate choice to enrich himself by selling dangerous substances and indifference to the harm that will cause the community. (*Id.* at 45.) Moreover, Mr. Willis continues to disclaim any responsibility for his actions related to the conspiracy and refuses to accept responsibility for his offense.[7] Based on these facts a reduced sentence would fail to reflect the seriousness of Mr. Willis' conduct, promote respect for the law, and provide just punishment for his offense.

The Court also must consider Mr. Willis' potential danger to the community via his potential return to drug dealing activity if released early. The Court has already made an assessment that 235 months of imprisonment is the appropriate term of incapacitation to protect the community from potential harm by Mr. Willis. In making this assessment the Court

---

[7] The Court recognizes now, as it did at sentencing, Mr. Willis was more forthright than the average defendant in admitting he was a heroin dealer and providing details of some of his dealing activity to law enforcement officers. (DE 398 at 45.)

12

considered Mr. Willis' age and the diminished likelihood of older offenders to recidivate, which led to the Court granting a downward variance of six offense levels. Mr. Willis has offered no argument to dispute the Court's previous assessment. The Court's independent review of the record found no other basis to suggest this period of incapacitation should be amended.

The Court would consequently deny Mr. Willis' motion in discretion based on the balance of the § 3553(a) factors, even if he had properly exhausted his claims and provided an extraordinary and compelling reason for his release.

### D. Conclusion

For those reasons, the Court DENIES Mr. Willis' motion for compassionate release or reduction in sentence. (DE 652.)

SO ORDERED.

ENTERED: April 22, 2024

                                                /s/ JON E. DEGUILIO
                                                Judge
                                                United States District Court